# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## CITIZENS BANK OF NORFOLK V. SCHWARZSCHILD AND SULTZBERGER CO.

June 10, 1909.

1. BANKS AND BANKING—*Money Paid by Mistake.*—Generally, money paid under a mistake of fact may be recovered back, but the payment of a check or note by a bank upon which it is drawn, or at which it is made payable, under the mistaken belief that the drawer of the check or the maker of the note has sufficient funds to his credit to pay the check or note seems to be an exception to the general rule. Such payments cannot be recovered back. The payment is a finality, and the fact that the drawer or maker had no funds on deposit does not alter the situation.

2. BANKS AND BANKERS—*Coupons Payable at Bank—Payment by Mistake.*—If negotiable coupons payable to bearer and possessing all the qualities and incidents of commercial paper are paid by mistake by the bank at which they are payable, there can be no recovery by the bank against the former holder of such coupons as for money paid by mistake.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of assumpsit. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*A. B. Seldner,* for the plaintiff in error.

*Robert W. Shultice,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

This is an action of *assumpsit* to recover money paid by the plaintiff under an alleged mistake of fact.   Upon the issue of *non-assumpsit,* the whole matter of law and fact was submitted to the court and a judgment rendered in favor of the defendant.

The material facts of the case are that on the 4th day of November, 1907, the defendant, the Schwarzschild and Sulzberger Company, a corporation, presented through the Norfolk National Bank of Norfolk, for payment, fifteen coupons of seventy dollars each, due on the first day of that month, taken from bonds held by the defendant.   The bonds from which the coupons were taken were issued by the Jamestown Hotel Corporation and held by the defendant.   The coupons were in the following words:

"$70.00.

"The Jamestown Hotel Corporation will pay to bearer, at the Citizens Bank of Norfolk, Virginia, upon surrender of this coupon, seventy dollars in gold coin of the United States, on the first day of November, A. D., 1907, for one year's interest then due on its bond, No. 1.

"CHAS. M. BARNETT, Treasurer."

At the time the coupons were presented for payment at the plaintiff bank, the Jamestown Hotel Corporation, the maker thereof, had on deposit with the plaintiff the sum of $1,898.97; but on the 16th day of the preceding month an execution creditor of the Hotel Corporation, whose judgment amounted to more than $14,000, caused a summons on suggestion to be served upon the plaintiff bank.   When the summons was served upon the president of the plaintiff bank, he notified the other officers of the bank and the bookkeeper in charge of the account not to pay out any part thereof except by order of the court.   Subsequently, and before the coupons in question were paid, the

existing account of the Hotel Corporation which had been garnisheed in the hands of the plaintiff was transferred from the active ledger of the bank to the inactive department and marked "Corp.," and a new account opened with the Hotel Corporation, then in a failing condition and being operated under the direction of the court. When the coupons were presented for payment the plaintiff bank had changed its clerks and a new clerk misread the word "Corp." for "coupons," and thinking that the Hotel Corporation's account marked "Corp." was set apart for the payment of coupons, as the bank's habit was, paid them and charged them to that account. The mistake was not known until some two weeks afterwards when the president of the plaintiff bank, in looking over the Hotel Corporation's account to ascertain the amount to its credit when the summons on suggestion was served upon him, discovered it. The plaintiff bank at once notified the defendant of the mistake, offered to return the coupons, and requested repayment, which after some months of correspondence was refused. The plaintiff bank was compelled to pay the whole $1,898.87 in its hands when garnisheed to the execution creditor, and will lose the $1,050 paid the defendant unless it can recover it from the defendant, as the Hotel Corporation is insolvent.

The general rule is that money paid under a mistake of fact may be recovered, but the payment of a check or note by a bank upon which it is drawn, or at which it is made payable, under the mistaken belief that the drawer of the check or the maker of the note has sufficient funds to his credit to pay the check or note, seems to be an exception to the general rule. The cases do not seem to be entirely agreed upon what principle this exception is based, but the great, if not the overwhelming weight of authority maintains this exception to the general rule. Some place it upon the ground that there is no privity between the holder of the check or note and the bank; others upon the ground that since the bank always has the means of knowing the state of the depositor's account by simply looking at its

own books, the payment is not a payment by mistake within the meaning of the legal rule which permits a recovery; others still place their decision upon both grounds.

In *Hull* v. *Bank,* Dudley, 259, one of the earliest American cases that we have found, the Supreme Court of South Carolina said that "the question was one to be decided rather upon authority than general reasoning on the subject. No part of a commercial community is more interested in commercial usages than banks, and they cannot complain when they are required to strictly conform to them. They cannot always guard against fraud and imposition, but they may against mistakes depending on an inspection of their own books and accounts. * * * They accepted and paid the check presented by the defendant for and on account of Hepton, the drawer, whose money they kept for his convenience and accommodation. The privity of contract was between them and their customer, Hepton, and not between them and one who may have happened in the course of dealing to present a check drawn by Hepton."

In *First National Bank* v. *Burnham,* 32 Mich. 328, 331, Judge Cooley said, in discussing this question: "But we think it would be an exceedingly unsafe doctrine in commercial law, that one who has discounted a bill in good faith and received in its payment the strongest possible assurance that it was drawn with proper authority, should afterward hold the money subject to such a showing as the drawee might be able to make as to the influences operating upon his mind to induce him to make payment. The beauty and value of the rules governing commercial paper consists in their perfect certainty and reliability. They would be worse than useless if the ultimate responsibility for such paper as between payee and drawee, both acting in good faith, could be made to depend upon the motive which influenced the latter to honor the paper."

In *Oddie* v. *National City Bank,* 45 N. Y. 735, 6 Am. Rep. 160, the court of appeals of New York (Chief Justice Church), in discussing this question said: "When a check is presented to

a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in *Pratt* v. *Foote,* 9 N. Y. 463, but if it accepts such a check and pays it, either by delivering the currency or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine. * * * The bank always has the means of knowing the state of the account of the drawer, and if it elects to pay the paper, it voluntarily takes upon itself the risk of recovering it out of the drawer's account or otherwise."

In *Manf. Nat. Bank* v. *Swift,* 70 Md. 515, 17 Atl. 336, 14 Am. St. Rep. 381, it was said that, if any other rule prevailed "no one could know when he could safely receive payment of a check." It is further said: "It is the duty of a bank to know the state of its depositor's account, and if it makes a mistake, it must abide the consequences. The presentation of a check is a demand for payment. If it is paid, all the rights of the payee have been satisfied and he is not entitled to ask any questions. It would forever destroy the character of a bank in all commercial circles if when it was ready and willing to pay a check, it permitted the holder to inquire if the drawer had funds there to meet it. It is a matter with which he had no concern. In the absence of fraud on the part of the holder, the payment of a check by a bank is regarded as finality, and the fact that the drawer had no funds on deposit will not give the bank any remedy against the holder."

In *National Bank of New Jersey* v. *Berrall,* 70 N. J. L. 757, 58 Atl. 189, 103 Am. St. Rep. 821, 66 L. R. A. 599, 1 Am. & Eng. Ann. Cases, 630, it was held that where a payee of a check, after endorsing it generally, deposits it to his account in his own bank, by which it is forwarded to the bank upon which it is drawn for collection, and the latter bank pays it by mistake, there is no privity between the paying bank and the payee to support an action by the former against the latter to recover

the amount of the check as for money paid by mistake. It was further held in that case, that aside from the question of privity the payment cannot be said to have been made by mistake, where the alleged mistake consists in having overlooked the fact that payment of the check had been stopped; for a bank is under no legal obligation to the holder thereof to pay a check drawn upon it, and the bank being bound to know the state of its depositors' accounts, if it does make payment of a check to a *bona fide* holder who is without notice of any infirmity therein, the transaction is closed as between the parties to the payment.

Morse, in his work on banking, says without qualification, that if a bank pays or accepts a check under the misconception that it has funds it cannot recover from the holder, but it must look to the drawer alone for redress, except that under the clearing house rules a check paid through the clearing house may be returned within a certain time, if the funds are found insufficient. 2 Morse on Banking, sec. 455. See also generally *Bantench* v. *Dorrien,* 6 East, 199; *Levy* v. *Bank of United States,* 4 Dall (U. S.), 234, 1 L. Ed. 814; *First Nat. Bank* v. *Dimmick,* 15 Colo. 229, 22 Am. St. Rep. 394, 25 Pac. 177; *Riverside Bank* v. *First Nat. Bank* (C. C. A.), 74 Fed. 276, 5 Cyc. 534-5.

The coupons which were paid were payable to bearer at the plaintiff bank, and possessed all the qualities and incidents of commercial paper. (*Arents* v. *Commonwealth,* 18 Gratt. 750, 766-7, and cases cited.) Their payment under the facts disclosed by the record would no more entitle the plaintiff bank to recover from the defendant than if the paper paid had been the Hotel Corporation's check, bill or note. The same reasoning that applies in the one case is equally applicable in the other. If there be no privity in the one case, there is none in the other, and if the misapprehension as to the state of the maker's account is not a mistake within the meaning of the legal rule which permits a recovery, in the one case, it is equally not such a mistake in the other.

While the reasoning of the courts in the cases quoted from, that there can be no recovery in a case like this, is not altogether satisfactory, the conclusion reached by them is sustained by the great current of authority, and seems to be in accord with commercial usage.

We are of opinion, therefore, to affirm the judgment complained of.

*Affirmed.*