## Richmond

### William J. Kirby, Et Al. v. First and Merchants National Bank.

June 16, 1969.

Record No. 6912.

Present, All the Justices.

*Donald C. Grey (Murphey and McGeein,* on brief), for plaintiffs in error.

*Donald H. Clark (Kellam and Kellam,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

On December 30, 1966, defendant Margaret Kirby handed the following check to a teller at a branch of plaintiff First & Merchants National Bank:

NEUSE ENG. AND DREDGING CO.

Check
Number _____

$$\frac{68\text{-}728}{514}$$

12-29-1966

Pay to the
order of    William J. Kirby & Margaret Kirby        $2,500.00

Twenty-Five Hundred -  -  -  -  -  -  -  Dollars

FIRST & MERCHANTS    NEUSE ENG. & DREDGING CO.
NATIONAL  BANK       _____
Virginia Beach, Virginia        /s/ W. R. Wood
. . . 0514 . . . 0728

The back of the check bore the signatures of the payees, Mr. and Mrs. Kirby.

Mrs. Kirby, who also had an account with the Bank, gave the teller the following deposit ticket:[1]

The teller handed $200 in cash to Mrs. Kirby, and the Bank credited her account with $2,300 on the next business day, January 3, 1967. The teller or another Bank employee made the notation "Cash for Dep." under Mr. and Mrs. Kirby's signatures on the back of the Neuse check.

On January 4 the Bank discovered that the Neuse check was drawn against insufficient funds. Instead of giving written notice, a Bank officer called Mr. and Mrs. Kirby on January 5 to advise that the Bank had dishonored the check and to request reimbursement. Mr. and Mrs. Kirby said they would come to the Bank to cover the check, but they did not. On January 10 the Bank charged Mrs. Kirby's account with $2,500, creating an overdraft of $543.47.

On January 18 the Bank instituted this action to recover $543.47 from Mr. and Mrs. Kirby. At the trial a Bank officer, the only witness in the case, testified:

"Q. Did you cash the check [the Neuse check for $2,500] before you credited this deposit [the deposit of $2,300 to Mrs. Kirby's account]?

---

[1] The handwriting in the upper-left portion of the deposit ticket corresponds with Mrs. Kirby's handwriting on the back of the check. The record does not indicate what persons added the other handwritten information on the ticket.

The symbol "68-728-514" designates a check drawn on First & Merchants by a depositor who has an account with a branch of that Bank in the Norfolk-Virginia Beach area. The word following the symbol is "partial".

"A. Yes, sir.

"Q. So the bank, in effect, cashed the check for $2,500.00 and then gave the defendant a credit of $2,300.00 to their [*sic*] account and gave them [*sic*] $200.00 in cash?

"A. Correct.

" * * *

"Q. So you cashed the check for $2,500.00?

"A. Yes, sir."

The trial court, sitting without a jury, entered judgment for the plaintiff First & Merchants, and the defendants Mr. and Mrs. Kirby appeal. The question is whether the Bank had the right to charge Mrs. Kirby's account with $2,500 on January 10 and to recover from Mr. and Mrs. Kirby the overdraft created by that charge ($543.47).

U.C.C. § 4-213[2] provides:

"(1) An item[3] is finally paid by a payor bank when the bank has done any of the following, whichever happens first:

"(a) paid the item in cash;".

So if First & Merchants paid the Neuse check in cash on December 30, it then made final payment and could not sue Mr. or Mrs. Kirby on the check except for breach of warranty.[4]

---

[2] The Uniform Commercial Code ("U.C.C.") has been codified as Titles 8.1 through 8.10 of the Code of Virginia. References to the U.C.C. are to that Code as adopted in Virginia, but citations will omit the title number 8. *E.g.* U.C.C. § 4-213 means Va. Code Ann. § 8.4-213.

[3] The Uniform Commercial Code gives "item" its generally accepted meaning: " 'Item' means any instrument for the payment of money even though it is not negotiable but does not include money." U.C.C. § 4-104(1)(g).

[4] As shown by the quotation in the text, U.C.C. § 4-213, which deals with bank deposits and collections, provides without qualification that a payor bank's payment of an item in cash is final. The Code recognizes, however, that a bank may recover a payment when a presenter's warranty is breached, *e.g.*, when an endorsement is forged. U.C.C. §§ 3-417 (1), 4-207(1). And under the established law before adoption of the Uniform Commercial Code, a bank could also recover a payment in case of fraud or bad faith on the part of the person receiving the payment. 3 *Paton's Digest of Legal Opinions, Overdrafts* § 4:1 (1944). In this case there is no evidence of breach of a presenter's warranties or of fraud or bad faith.

Unlike U.C.C. § 4-213, U.C.C. § 3-418, which deals with commercial paper generally, implies that payment of an instrument is final only in favor of a holder in due course or a person who has changed his position in reliance on the payment. First & Merchants neither relied on U.C.C. § 3-418, nor based its right to recover on an assertion that Mr. and Mrs. Kirby were not holders in due course and did not change their position. *See* U.C.C. § 3-307 and comment. Moreover, insofar as U.C.C. §§ 3-418 and 4-213 conflict, U.C.C. § 4-213 prevails. U.C.C. § 4-102(1).

When Mrs. Kirby presented the $2,500 Neuse check to the Bank on December 30, the Bank paid her $200 in cash and accepted a deposit of $2,300. The Bank officer said that the Bank cashed the check for $2,500, which could mean only that Mrs. Kirby deposited $2,300 in cash.

And the documentary evidence shows that cash was deposited. The deposit of cash is evidenced by the word "currency" before "2,300.00" on the deposit ticket and by the words "Cash for Dep." on the back of the check.[5] The Bank's ledger, which shows a credit of $2,300 to Mrs. Kirby's account rather than a credit of $2,500 and a debit of $200, is consistent with a cashing of the Neuse check and a depositing of part of the proceeds. We must conclude that First & Merchants paid the Neuse check in cash on December 30, and, therefore, had no right thereafter to charge Mrs. Kirby's account with the amount of the check.

■ The trial court apparently decided that Mr. and Mrs. Kirby were liable to the Bank because they had indorsed the Neuse check. But under U.C.C. § 3-414(1) an indorser contracts to pay an instrument only if the instrument is dishonored. And, as we have pointed out, the Bank did not dishonor the Neuse check, but paid the check in cash when Mrs. Kirby presented it.

As a practical matter, the contract of an indorser under U.C.C. § 3-414(1) does not run to a drawee bank. That contract can be enforced by a drawee bank only if it dishonors a check; and if the bank dishonors the check, it has suffered no loss.

The warranties that are applicable in this case are set forth in U.C.C. §§ 3-417(1) and 4-207(1): warranties made to a drawee bank by a presenter and prior transferors of a check. Those warranties are applicable because Mrs. Kirby presented the Neuse check to the Bank for payment. U.C.C. § 3-504(1); *Bunn, Snead & Speidel, An Introduction to the Uniform Commercial Code* § 3.4(B) (1964). And those warranties do not include a warranty that the drawer of a check has sufficient funds on deposit to cover the check.

■ The rule that a drawee who mistakenly pays a check has recourse only against the drawer was firmly established before adoption of the Uniform Commercial Code:

---

[5] Since no dollar amount was inserted after "checks" on the deposit ticket, the notation "628-728-514 partial" was apparently inserted to identify the source of the currency being deposited. See n. 1, *supra*. .

"The drawer of a check, and not the holder who receives payment, is primarily responsible for the drawing out of funds from a bank. An overdraft is an act by reason of which the drawer and not the holder obtains money from the bank on his check. The holder therefore in the absence of fraud or express understanding for repayment, has no concern with the question whether the drawer has funds in the bank to meet the check. The bank is estopped, as against him, from claiming that by its acceptance an overdraft occurred. A mere mistake is not sufficient to enable it to recover from him. Banks cannot always guard against fraud, but can guard against mistakes.

"It is therefore the general rule, sustained by almost universal authority, that a payment in the ordinary course of business of a check by a bank on which it is drawn under the mistaken belief that the drawer has funds in the bank subject to check is not such a payment under a mistake of fact as will permit the bank to recover the money so paid from the recipient of such payment. To permit the bank to repudiate the payment would destroy the certainty which must pertain to commercial transactions 'if they are to remain useful to the business public. Otherwise no one would ever know when he can safely receive payment of a check."

7 *Zollman, The Law of Banks and Banking* § 5062 (1936). *See* generally 3 *Paton's Digest of Legal Opinions, Overdrafts* § 4 (1944).

Virginia followed the same rule. *Citizens Bank of Norfolk* v. *Schwarzschild & Sultzberger Co.,* 109 Va. 539, 64 S.E. 954 (1901); *Bank of Virginia* v. *Craig,* 33 Va. (6 Leigh) 399, 431 (1835); *see* Va. Code Ann. § 8.3-417, Virginia Comment at 220 (1965 added vol.); Va. Code Ann. § 8.4-207, Virginia Comment at 271 (1965 added vol.)

Nevertheless, First & Merchants contends that under the terms of its deposit contract with Mrs. Kirby, the settlement was provisional and therefore subject to revocation whether or not the Neuse check was paid in cash on December 30.[6] It contends that in this regard the

---

[6] The depositor's contract provides:

"Items received for deposit or collection are accepted on the following terms and condition. *This bank acts only as depositor's collecting agent and assumes no responsibility beyond its exercise of due care. All items are credited subject to final payment and to receipt of proceeds of final payment in cash or solvent credits by this bank at its own office.* This bank may forward items to correspondents and shall not be liable for default or negligence of correspondents selected with due care nor for losses in transit, and each correspondent shall not be liable except for its own

deposit contract changes the rule set forth in the Uniform Commercial Code. But in providing that "all items are credited subject to final payment", the contract recognizes that settlement for an item is provisional only until the item is finally paid. Since the deposit contract does not change the applicable rule as set forth in the Uniform Commercial Code, we do not decide whether a bank can provide by deposit contract that payment of a check in cash is provisional.

Even if the Bank's settlement for the Neuse check had been provisional, the Bank had the right to charge that item back to Mrs. Kirby's account only if it complied with U.C.C. §§ 4-212(3) and 4-301. Those sections authorize the revocation of a settlement if, before the "midnight deadline",[7] the bank

"(a) returns the item; or
"(b) sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return". U.C.C. § 4-301.

The Bank concedes that it neither sent written notice of dishonor nor returned the Neuse check before the "midnight deadline". So the Bank had no right to charge the item back to Mrs. Kirby's account.

For the reasons set forth, the trial court erred in entering judgment for First & Merchants against Mr. and Mrs. Kirby.

*Reversed and final judgment.*

HARRISON, J., dissenting.

I dissent from the holding of the majority that the check involved here was "cashed". It is apparent that the check of Neuse Engineer-

---

negligence. Items and their proceeds may be handled by any Federal Reserve bank in accordance with applicable Federal Reserve rules, and by this bank or any correspondent, in accordance with any common bank usage, with any practice or procedure that a Federal Reserve bank may use or permit another bank to use, or with any other lawful means. *This bank may charge back, at any time prior to midnight on its business day next following the day of receipt, any item drawn on this bank which is ascertained to be drawn against insufficient funds or otherwise not good or payable. An item received after this bank's regular afternoon closing hour shall be deemed received the next business day.*

"This bank reserves the right to post all deposits, including deposits of cash and of items drawn on it, not later than midnight of its next business day after their receipt at this office during regular banking hours, and shall not be liable for damages for nonpayment of any presented item resulting from the exercise of this right.

" * * * " (Italicized language is quoted in First & Merchants brief.)

[7] "Midnight deadline" is defined in U.C.C. § 4-104(1)(h). See also the Bank's deposit contract, *supra,* n. 6.

ing and Dredging Company was "deposited" in normal course by Mrs. Kirby, and received and accepted for deposit by the Princess Anne Plaza Branch of the First and Merchants National Bank. The same bank official, quoted by the majority, also testified:

Q. "Did Margaret Kirby or William Kirby bring you a check to deposit on December 29, 1966?
A. "Yes, sir, they did.
Q. "Tell what happened to this particular check.
A. "We received it for deposit on Friday night, the 29th. We deposited $2,300 and gave back cash, $200. . . ."

(Admittedly the correct date of the deposit was Friday, December 30, 1966.)

This witness, the only one who testified in the case, was Mr. Floyd E. Waterfield, Vice President of the bank. From his testimony we learn that late in the afternoon of December 30, 1966, Mrs. Kirby, a customer of the bank with an active checking account, came into the bank with the Neuse check. Apparently she desired $200 in cash. In making out the deposit slip, $2300 was erroneously written opposite the currency line instead of opposite the check line. However, indicated in writing on the face of the deposit slip is a notation that the deposit was evidenced by a check drawn on another of the bank's branches in the Norfolk-Virginia Beach area. Also on the face of the deposit slip is shown the manner in which Mrs. Kirby obtained the $200 she wanted, i.e. by deducting $200 from the $2500 check.

This was a perfectly normal and customary banking transaction. Mrs. Kirby, as a customer of that particular branch bank, presumably could have obtained $200 by writing her personal check, or by having the bank issue and she initial a debit memorandum or charge on her account, or by having the transaction reflected on the face of the deposit slip. She and the bank teller obviously pursued the latter course, and this was entirely in order. When the books of the bank were balanced for the day's operations, the bank had a $2500 check of Neuse, which was offset or balanced against a cash withdrawal of $200, plus a tentative or provisional credit of $2300 in the Kirby checking account.

There is nothing in this record from which it could possibly be deducted that Mrs. Kirby walked into the bank and cashed the Neuse check for $2500. That is, she presented the check and demanded and

received $2500 in cash, and afterwards redeposited $2300 of it in currency. This simply did not occur, and the evidence does not reflect it. While the bank officer does refer to "cashing the check", the evidence and the records of the bank show that it was not cashed, but was accepted for deposit and clearance as any other check.

The fact that the bank permitted Mrs. Kirby to withdraw $200 is of no significance. She was a customer of the bank, with a checking account. Had the withdrawal, absent the Neuse deposit, caused an overdraft, this would not have been unusual for banks permit customers to overdraw from time to time in reasonable amounts. Furthermore, at that time neither Mrs. Kirby nor the bank had reason to anticipate that the Neuse check would be dishonored because of insufficient funds.

If the check was deposited and not cashed, the next question faced is to determine the obligation of the Princess Anne Plaza Branch of the bank when the Neuse check was dishonored and returned to it because of insufficient funds. Admittedly, there is a statutory duty on the part of a bank, occupying the position of the appellee here, to send notice of dishonor.

Appellee requires, as a condition or prerequisite for the opening of an account by a depositor, that such depositor sign the written contract set forth in a footnote of the opinion. This contract in essence expressly provides that the bank, in receiving items for deposit, acts only as the depositor's collecting agent, and that such items are credited subject to final payment.

The bank here was not dealing with a stranger. It was dealing with the Kirbys—customers of the bank—with whom they had a contractual arrangement. When the Neuse check was returned, the bank promptly communicated by telephone with the Kirbys and advised them of the return of the check. The Kirbys, with whom the bank enjoyed a professional and a semi-confidential relationship, and who had designated the bank as their collecting agent, promised "they would be in to cover". The bank relied upon the agreement, and the Kirbys' express representation, and withheld taking any action pending their arrival to attend to the transaction.

Normally the bank would have charged the Neuse check to the account of the Kirbys, attached a slip to it showing that it had been returned because of insufficient funds, and mailed to them. That would have completed the transaction insofar as the bank was concerned, and the Kirbys could have taken such action against Neuse as

they felt proper. In the instant case the check was not returned for the reason that the bank had permitted the Kirbys to draw on their checking account in an amount which reduced their account below the sum of $2500. The Neuse check was the bank's evidence of the obligation and therefore it could not properly be surrendered.

The purpose of prompt notification to a customer that a check deposited by him has been dishonored is two-fold: (1) So that the customer payee of the check can take prompt action against the drawer to recover, and (2) So that the customer will not draw checks on his account under the impression that his deposit, as evidenced by a dishonored check, is good, and that he has funds in the amount of the check in the bank.

The statute (Code § 8.4-301) in dealing with the return to a bank of an item, such as a dishonored check, expressly recognizes the possibility of the bank's handling the check pursuant to the customer's instructions. Here the customer not only contracted in writing that the bank, in receiving checks for deposit, would act as collecting agent, but, upon notification that the Neuse check had been dishonored, agreed to come to the bank and take care of the overdrawn account.

This express promise to come to the bank and cover the overdraft, made upon receipt of notification of the check's dishonor, was justification of the bank's action in withholding formal written notice of dishonor, pending their arrival.

Under the circumstances, I am of opinion that the Kirbys are estopped by the depositor's contract that they signed, and by their actions and dealings with the bank, from availing themselves of the provisions of Code § 8.4-212 (3) and § 8.4-301, requiring written notice.

I would affirm the judgment of the lower court.

EGGLESTON, C.J., joins in this dissent.