The suit out of which this appeal arises was initiated by appellee-First Alabama Bank of Montgomery in an effort to recover the proceeds from two checks endorsed by appellant-James M. "Jimmy" Dozier and presented to First Alabama Bank for deposit in Dozier's account. Following a non-jury trial on the matter, the Circuit Court of Montgomery County rendered a judgment in favor of First Alabama Bank in the amount of $1,425 plus interest and costs. From that judgment Jimmy Dozier appeals.
The transaction which resulted in the bank's action against Dozier occurred on November 24, 1976. On that date Jimmy Dozier, his cousin J.S. Dozier, and a man named D.R. Lockett entered the Adams Avenue branch of First Alabama Bank and asked the assistant branch manager to authorize payment by a teller for two checks drawn on the account of Montgomery East, Inc., a local corporation. The two checks were for a total amount of $1,425. After Jimmy Dozier praised the character of the men he was with, the assistant manager (who knew only Jimmy Dozier) agreed to approve the transaction. At that point a check was drawn on the account of Montgomery East and signed by D.R. Lockett. The check was made payable to Four Winds Steel Company, which was a corporation owned by J.S. Dozier. J.S. Dozier then endorsed the reverse side of the check and transferred it to Jimmy Dozier who endorsed it for deposit in the account of his business, Cook's Station Grocery. Following these events, Jimmy Dozier drew a check on his personal account for $1,425. The latter check was cashed by a bank teller and the three men left the bank.
On December 3, 1976, six full business days after the bank had received the check signed by Lockett, the assistant manager of Adams Avenue branch learned from other banking officials that Lockett was not authorized to sign checks on behalf of Montgomery East. Upon learning of this fact, the assistant manager telephoned Jimmy Dozier and informed him that the check signed by Lockett and endorsed by Dozier had been "dishonored." When Jimmy Dozier refused to pay the bank the amount represented by the two checks, First Alabama Bank filed suit to recover the proceeds of the checks.
Under the terms of the Uniform Commercial Code, one who endorses a check warrants that upon dishonor of the check and relevant notice of such dishonor, he will *Page 783 
pay the instrument according to its tenor at the time of his endorsement. UCC § 7-3-414, Code of Alabama 1975. Consequently, dishonor and notice of dishonor are prerequisites to the endorser's liability.
In the instant case First Alabama Bank never dishonored the check endorsed by Jimmy Dozier for deposit in his account. An instrument is not dishonored unless "due acceptance or payment is refused or cannot be obtained within the prescribed time or . . . the instrument is seasonably returned by the midnight deadline." UCC § 7-3-507 (1)(a). None of these events occurred in the case at bar. Moreover, the bank made final payment on the check, and if final payment is made on an instrument a bank cannot send it back or dishonor it. UCC §§ 7-4-213 (1)(d) and7-4-301 (1); White-Summers Uniform Commercial Code 530-33 (1972). Final payment occurred because the bank failed to return the item or send notice of dishonor before its midnight deadline. UCC §§ 7-4-213 (1)(d) and 7-4-301 (1). The midnight deadline for notice of the bank's dishonor was "midnight on its next banking day following the banking day on which it [the bank] receive[d] the relevant item . . . ." UCC § 7-4-104
(1)(h). No notice of dishonor was sent by First Alabama Bank by midnight of November 26, 1976, which was the relevant midnight deadline. Thus there was no dishonor of the check endorsed by Jimmy Dozier. UCC § 7-3-507 (1)(a).
Nor was there notice of dishonor as required by section7-3-501 (2)(a). A bank must give notice of dishonor before its midnight deadline. As stated earlier, the events in this case demonstrate that notice of dishonor was not given within the requisite midnight deadline. Since dishonor and notice of dishonor are prerequisites to an endorser's liability under section 7-3-414, the bank's failure to dishonor and its delay in giving notice of dishonor completely discharged Dozier of liability on his endorsement contract. White-Summers UniformCommercial Code 416-20 (1972).[1]
Although the bank was not entitled to rely on Dozier's endorsement contract to obtain recovery of the proceeds from the checks, an endorsement contract is not the only basis for recovery in cases such as the instant one.
A bank may also charge back the amount of a check to its customer's account under the provisions of Uniform Commercial Code section 7-4-212. In the present case First Alabama Bank was both a depositary bank and a payor bank. UCC § 7-4-105
(a)-(b).[2] And the pertinent code section to determine when a depositary bank (which is also a payor bank) may charge back on a customer's account is section 7-4-212 (3). This section allows a bank to obtain a refund for its provisional credit in accordance with UCC section 7-4-301 (2). However, the bank must act within the time limits prescribed by section 7-4-301 (1). Section 7-4-301 (1) states that the bank must return the item or give written notice of dishonor "before it has made final payment (subsection (1) of section 7-4-213) and before its midnight deadline." If the bank fails to act within the time limit and manner specified by section 7-4-301 (1), it is not entitled to revoke settlement or recover any payment. UCC §7-4-301 (2). As we have previously indicated, First Alabama Bank made final payment on the check and did not give notice of dishonor by midnight of the banking day following the banking day on which it received the check. UCC §§ 7-4-213 (1)(d) and7-4-104 (1)(h). Accordingly, First Alabama Bank could not recover from Dozier on the bank's right of charge back or refund under section 7-4-212. *Page 784 
However, even if a payor bank has initially lost its right to charge back, it can nevertheless hold an endorser accountable for an item if the endorser committed a breach of the presentment warranties. UCC § 7-4-302. Sections 7-3-417
(1)(a)-(c) and 7-4-207 (1)(a)-(c) contain the presentment warranties. Subsection (b) of these warranties states that any person or customer who obtains payment of an item warrants that he has no knowledge that the signature of the maker or drawer of an instrument is unauthorized. In the case at bar it was undisputed that D.R. Lockett was not authorized to sign checks on behalf of Montgomery East. Despite this fact, there was absolutely no evidence presented at trial that Jimmy Dozier knew that Lockett lacked authority to draw checks on the account of Montgomery East. Since Dozier had no knowledge that Lockett's signature was unauthorized, First Alabama Bank was not entitled to a judgment against Dozier on the basis of the latter's presentment warranties.[3]
Despite the inapplicability of presentment warranties in cases such as the one at hand, a bank is not totally without remedy. UCC § 7-4-407. The preamble to section 7-4-407 confers upon a payor bank a right of subrogation in certain cases. The right of subrogation exists in order to prevent unjust enrichment to the extent necessary to prevent loss to the bank by reason of its having paid an item. UCC § 7-4-407. The Uniform Commercial Code provides that section 7-4-407 comes into play only in those cases where the bank has paid over the stop order of a maker or drawer or the maker or drawer otherwise has a "basis for objection." Presumably the bank can invoke section 7-4-407 every time the maker or drawer complains about the payment of an item which was not properly payable. UCC § 7-4-401 (1). White-Summers Uniform Commercial Code 587 (1972). In the present dispute, Montgomery East, upon learning that funds had been withdrawn from its corporate account as a result of the check signed by Lockett, contacted First Alabama Bank and complained that the item was not "properly payable" because Montgomery East had notified First Alabama Bank prior to the transaction of November 24 that Lockett was not authorized to write checks on Montgomery East's corporate account. Upon receiving notice of the complaint by Montgomery East, First Alabama Bank concluded that funds had been improperly withdrawn from the former's account as a result of Lockett's actions. The bank then promptly recredited the Montgomery East account for the amount represented on the check written by Lockett and endorsed by Jimmy Dozier. Based on these events, the bank now claims it is subrogated to the rights of Montgomery East and can recover the amount recredited to the latter's account from Jimmy Dozier. However, such is not the case.
Subsection (c) of section 7-4-407 subrogates a bank to the rights of the drawer or maker against the payee or other holder with respect to the transaction out of which the item arose. Accordingly, the critical question becomes whether Montgomery East was the "drawer or maker" of the checks upon which this action is based. We hold that it was neither. D.R. Lockett was not authorized to sign the checks in question. Section 7-3-404
provides that an unauthorized signer may be held liable as a result of his signature on an instrument. *Page 785 
The checks involved in this suit contain only Lockett's signature; in fact, they were bank counter checks which did not contain the name of Montgomery East. Furthermore, the checks were not signed by any authorized agent of Montgomery East. See
UCC § 7-3-403. And in view of the fact that Lockett's signature was the only signature on the check, he was personally liable on the check, UCC § 7-3-401 (1) and likewise the maker or drawer thereof. Therefore, Montgomery East should not be considered the maker or drawer of the check for purposes of section 7-4-407 (c). Cf. Neo-Tech Systems, Inc. v. ProvidentBank, 43 Ohio Misc. 31, 335 N.E.2d 395, 17 UCC Rep. 1079 (1974). Since Montgomery East is not the maker or drawer of the instrument, the bank is not entitled to be subrogated to the former's rights.
The final issue for our consideration on this appeal concerns the bank's assertion that the checks which were endorsed by Jimmy Dozier were founded in whole or in part on a gambling debt between Lockett and J.S. Dozier. Consequently, the bank argues that the transaction involving the endorsement and presentment of the checks to the Adams Avenue branch was void under the language of section 8-1-150, Code of Alabama 1975, which provides that contracts founded upon gambling consideration are void. Thus, the bank claims it is entitled to recover the proceeds of the checks from Dozier. Section8-1-150. Dozier maintains that the issue of a void gambling contract was not raised at the trial below and cannot now be presented on appeal. 2 Ala.Dig. Appeal Error 169; Rule 4, ARAP and committee comments thereto.
The issue of a void gambling contract was not contained in any of the bank's pleadings in this matter. However, under Rule 15 (b) of the Alabama Rules of Civil Procedure a party's pleadings "shall" be deemed amended to conform to evidence which is introduced without objection from the opposing party. In the present case there was some evidence which tended to establish that a gambling debt existed between Lockett and J.S. Dozier. This evidence arose out of the following exchange between Jimmy Dozier and the bank's attorney:
 Q. Do you know why D.R. Lockett owed your cousin [J.S. Dozier] any money?
A. He just owed him some money.
Q. Did he tell you why?
A. Just a personal debt.
Q. Did he tell you it was a gambling debt?
A. He just said a personal debt.
 Q. Did he tell you that D.R. Lockett owed him some money because of their gambling relationship?
A. He said it was a personal debt.
 Q. Well, I'm asking you if he told you that it was because of a gambling transaction?
A. In a way I guess it was.
 Q. It was. You knew D.R. Lockett owed your cousin some money because they had gambled between one another?
A. Yeah.
. . . . .
 Q. . . . The only reason you went there was to help your cousin [J.S. Dozier] collect a gambling debt.
A. Collect a personal debt, yeah.
In view of the fact that the lawyer who represented Dozier failed to object to this testimony, we believe that it was sufficient to raise the issue of a void gambling contract.
Nonetheless, the above quoted evidence would not warrant a conclusion that Jimmy Dozier was liable on the checks which he endorsed and presented to the bank for deposit in his account under the language of section 8-1-150. Dozier testified that he was merely aiding Lockett and his cousin in cashing a check so that Lockett could repay a debt owed to Dozier's cousin. Dozier stated that he knew that Lockett owed Dozier's cousin a gambling debt and speculated that Lockett may have wished to cash a check for that reason. However, such evidence was not adequate proof that the proceeds from the checks which Dozier endorsed were actually used to repay a *Page 786 
gambling debt. See Osborn v. Pointer, 41 Ala. App. 271,128 So.2d 530 (1961). Moreover, in Osborn v. Pointer it was held that loans extended to enable a borrower to pay an antecedent gambling debt are generally recoverable by the lender regardless of language found in the statutory predecessor to section 8-1-150. Although we have concluded that Jimmy Dozier did not loan money so that an antecedent gambling debt could be repaid in the case at bar, nevertheless, reading the evidence in a light most favorable to the bank's interest demonstrates that if the proceeds from the checks in question were used for a gambling debt, Jimmy Dozier did no more than aid Lockett and his (Dozier's) cousin by obtaining cash for the check which Lockett had made payable to Dozier's cousin. Under the authority of Osborn v. Pointer we are not inclined to hold that one who aids in the repayment of an antecedent gambling debt by cashing a check for the parties whose activities resulted in the debt is liable under the language of section 8-1-150.
The trial transcript in this case contains substantial evidence that First Alabama Bank had notice that Lockett was not authorized to draw checks on the account of Montgomery East when it made payment on the checks by depositing the proceeds therefrom in Dozier's account. There was no evidence presented which would indicate that Jimmy Dozier knew that Montgomery East had withdrawn Lockett's authority to write checks on behalf of Montgomery East. Since the bank deposited the checks in Dozier's account despite the unauthorized signature of which it had knowledge, and did not subsequently withdraw payment of the items within the prescribed time, it must bear the loss in a suit against Dozier. This result is consistent with the basic principle that between two innocent parties, the loss due to an unauthorized signature must be borne by the one who was in a superior position to detect the lack of authorization. SeeCommercial Casualty Insurance Co. v. Isbell National Bank,223 Ala. 48, 134 So. 810 (1931); Farmers' Bank Trust Co. v. Shut Keihn, 192 Ala. 53, 68 So. 363 (1916); H.C. W.B. ReynoldsCo. v. Reynolds, 190 Ala. 468, 67 So. 293 (1914).
Upon consideration of the record we are of the opinion that the trial court erred as a matter of law in finding that appellant-Dozier was liable to First Alabama Bank; consequently, its judgment is reversed with directions that the trial court enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.
[1] As a practical matter the contract of an endorser under section 7-3-414 (1) does not run to a drawee bank. That contract can be enforced by a drawee bank only if it dishonors a check; and if the bank dishonors the check it has suffered no loss. Kirby v. First Merchants National Bank, 210 Va. 88,168 S.E.2d 273, 6 UCC Rep. 694 (1969).
[2] Section 7-4-105:
 (a) "depositary bank" means the first bank to which an item is transferred for collection even though it is also the payor bank;
 (b) "Payor bank" means a bank by which an item is payable as drawn or accepted;
[3] The bank in this case attempts to rely on transferor warranties contained in sections 7-3-417 (2)(a)-(e) and 7-4-207
(2)(a)-(e). Unlike the presentment warranties regarding unauthorized signatures, the transferor warranties delete any reference to knowledge on the part of the transferor. In other words, sections 7-3-417 (1)(b) and 7-4-207 (1)(b) state that the person or customer warrants that he has no knowledge that the signature is unauthorized while sections 7-3-417 (2)(b) and7-4-207 (2)(b) provide that the transferor warrants that all signatures are authorized. The bank maintains that Dozier's knowledge or lack thereof regarding Lockett's authorization to sign checks on behalf of Montgomery East is irrelevant in view of the provisions found in subsection (2)(b) of the transferor warranties. We disagree. As stated earlier, First Alabama Bank was a payor bank. UCC § 7-4-105 (b). And a payor bank cannot rely on the warranties embodied in sections 7-3-417 (2) and7-4-207 (2) because those warranties do not run to payors. White-Summers Uniform Commercial Code 511 (1972).