This is an appeal from a summary judgment entered in favor of AmSouth Bank, N.A. ("AmSouth"), and against Golden Gulf, Inc., and Starich, Inc. ("appellants") in the Circuit Court of Mobile County. The issues involve the application of the "Bank Deposits and Collections" chapter of the Commercial Code, particularly § 7-4-211 through -213, Ala. Code 1975, regarding whether a depositary bank has made final or only provisional settlement on an item and regarding its right to charge the item back against its depositor's account when the item is dishonored.
Richard White, Robert Underwood, and Terry Patrick were officers of an Alabama corporation, Golden Gulf.[1] In January 1988, they opened a demand checking account *Page 116 
at AmSouth on behalf of Golden Gulf. Shortly before this account was opened, a Utah corporation, Starich, had acquired substantially all of Golden Gulf's assets and had assumed substantially all of its liabilities. Thereafter, on April 21, 1988, Golden Gulf was dissolved and White, Underwood, and Patrick became employees of Starich. However, the Golden Gulf checking account at AmSouth was not closed and remained in use under that corporation's name.
On August 27, 1988, the appellants entered into a subscription agreement wherein Albert M. Rossini agreed to pay Starich $250,000 for 250,000 shares of Starich common stock. Rossini tendered a check, drawn on the Mark Twain Bank in Kansas City, Missouri, to the appellants for that amount, made payable to "Golden Gulf/Starich, Inc." That check was deposited in the Golden Gulf checking account at AmSouth on August 30, 1988. On September 1, 1988, the appellants contacted AmSouth to ask if the $250,000 had been "collected." AmSouth answered that the funds had not been collected. On September 2, 1988, the appellants again contacted AmSouth and asked if the funds were "available."[2] AmSouth told the appellants that the funds were available for use. The appellants then requested AmSouth to wire those funds to a bank in New York, for use by Starich in that State. AmSouth complied with that request.
On September 7, 1988, AmSouth received notice from the Mark Twain Bank that Rossini's check would not be paid, due to nonsufficient funds. On September 8, 1988, AmSouth notified the appellants that the check had been dishonored. After receiving that notice the appellants failed to take up the check, and AmSouth thereafter revoked the credit it had given the Golden Gulf account, asserting that the credit had been only provisional. AmSouth then charged back to that account the amount of the provisional credit, resulting in an overdraft of $248,965.69.
On October 13, 1988, AmSouth filed a complaint against the appellants, alleging that they were liable for the amount of the overdraft in accordance with Ala. Code 1975, §§ 7-4-207 and7-4-212. AmSouth filed a motion for summary judgment. After a hearing, the Circuit Court of Mobile County entered a summary judgment for AmSouth, awarding it $257,641.97. It is from that judgment that this appeal arises. The appellants contend that summary judgment was improper because they say there was a dispute as to whether AmSouth's answer that the funds were available constituted notice that a final settlement had been made. AmSouth contends that only a provisional settlement had been made and that its actions were consistent with common banking practice regarding provisional credits. In addition, the appellants contend that AmSouth failed to notify them of the dishonor of Rossini's check by the "midnight deadline," as required by Ala. Code 1975, § 7-4-212, that it was contributorily negligent in that failure, and that this contributory negligence precludes any recovery by AmSouth.
The first issue is whether AmSouth's responses to the appellants' inquiries gave rise to a fact question as to the "provisional" or "final" nature of the settlement extended to the appellants' account. As will be shown below, there is a presumption, under Alabama's commercial code, that the initial settlements extended by banks are provisional. If no evidence to rebut that presumption was before the trial court, AmSouth's right to charge back the amount credited to the appellants' account would be unaffected, and the summary judgment in favor of AmSouth would be proper. In order to resolve this issue, it is necessary to discuss the distinction between "provisional" and "final" settlements. *Page 117 
Upon receipt of a check, a depositary bank often extends a "provisional" credit to its customer's account, while reserving the right to charge back that amount if the check is dishonored. This credit allows the customer to make use of the funds represented by the deposited check. The prevalence of this practice is recognized in the official comment to §7-4-212: "Under current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid." As stated above, there is a presumption that the first settlement given for an item is provisional. That presumption is set out in § 7-4-201, reproduced in relevant part below:
 "(1) Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final (subsection (3) of section 7-4-211 and sections 7-4-212 and 7-4-213) the bank is an agent or subagent of the owner of the item and any settlement given for the item is provisional. This provision applies regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn."
The settlement or credit extended will ordinarily remain provisional until the depositary bank receives payment from the payor bank. See B. Clark, The Law of Bank Deposits, Collectionsand Credit Cards § 4.9, at 4-60 through -61 (1981). However, other actions by the payor bank or collecting bank may constitute final settlement. These actions are listed in §7-4-213, reproduced below:
 "(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
"(a) Paid the item in cash; or
 "(b) Settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
 "(c) Completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
 "(d) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.
 "Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.
 "(2) If provisional settlement for an item between the presenting and payor banks is made through a clearing house or by debits or credits in an account between them, then to the extent that provisional debits or credits for the item are entered in accounts between the presenting and payor banks or between the presenting and successive prior collecting banks seriatim, they become final upon final payment of the item by the payor bank.
 "(3) If a collecting bank receives a settlement for an item which is or becomes final (subsection (3) of section 7-4-211, subsection (2) of section 7-4-213) the bank is accountable to its customer for the amount of the item and any provisional credit given for the item in an account with its customer becomes final.
 "(4) Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right:
 "(a) In any case where the bank has received a provisional settlement for the item, — when such settlement becomes final and the bank has had a reasonable time to learn that the settlement is final;
 "(b) In any case where the bank is both a depositary bank and a payor bank and the item is finally paid, — at the opening of the bank's second banking day following receipt of the item.
 "(5) A deposit of money in a bank is final when made but, subject to any right *Page 118 
of the bank to apply the deposit to an obligation of the customer, the deposit becomes available for withdrawal as of right at the opening of the bank's next banking day following receipt of the deposit."
(Emphasis added.) It is undisputed that the payor bank, in this case the Mark Twain Bank, refused to pay the check. In addition, it is clear that neither AmSouth nor the Mark Twain Bank took any of the actions that trigger final settlement listed in § 7-4-213.
The appellants point to their evidence that AmSouth told them on September 2, 1988, that the funds were available for their use and argue that AmSouth thereby represented that the check had been paid. They argue further that that representation was equivalent to saying that a final settlement had been made. However, this argument is a misapprehension of the function and nature of provisional settlements. The mere availability of the funds represented by the check does not, by itself, confirm that the check has been finally paid. Instead, the bank allows its customer to make use of the funds while it awaits "subsequent determination of whether the item will be finally paid." Official comment to § 7-4-212. That is the very essence of provisional settlements.
Although the appellants repeatedly assert that AmSouth told them that the funds had been collected, and argue that, therefore, a final settlement had been made, they do not direct this Court's attention to any evidence supporting that assertion. After carefully reviewing the record, this Court has been unable to find any such evidence.[3] Rather, the evidence indicates that AmSouth told the appellants on September 1 and 2 that the funds had not been collected, but told them on September 2 that the funds were available. When AmSouth filed its motion for summary judgment, it also filed the affidavit of Tom Parks, a vice-president of AmSouth and manager of the bank's Fairhope, Alabama, branch. In his affidavit, Parks stated that AmSouth gave the appellants a provisional, not a final, settlement in the amount of $250,000 upon receiving the appellants' deposit.
When a party opposing a motion for summary judgment fails to offer an affidavit or other evidence that contradicts the evidence presented by the moving party, the trial court must consider that evidence as uncontradicted. Eason v. Middleton,398 So.2d 245, 248 (Ala. 1981). Because the appellants failed to introduce evidence that contradicted Parks's affidavit, or to otherwise rebut the presumption that the settlement extended was provisional, the trial court had to accept AmSouth's assertion that the settlement was provisional. This Court finds the trial court's determination on this point to be proper and in accordance with "current bank practice," as recognized in the official comment to § 7-4-212, quoted above.
Section 7-4-212 gives collecting banks the right to charge back amounts credited to their customers' accounts if the deposit that is the basis of a provisional settlement is subsequently dishonored or suspended. The relevant portions of that section are set out below:
 "(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge back and obtain refund terminate if and *Page 119 
when a settlement for the item received by the bank is or becomes final (subsection (3) of section 7-4-211 and subsections (2) and (3) of section 7-4-213).
". . . .
"(4) The right to charge back is not affected by:
 "(a) Prior use of the credit given for the item; or
 "(b) Failure by any bank to exercise ordinary care with respect to the item but any bank so failing remains liable.
 "(5) A failure to charge back or claim refund does not affect other rights of the bank against the customer or any other party."
(Emphasis added.)
Because the settlement involved in this case was provisional, AmSouth was entitled to charge back the amount of the dishonored check to the appellants' account. See Dozier v.First Alabama Bank of Montgomery, 363 So.2d 781 (Ala.Civ.App. 1978). The only requirement is that the bank notify its customer of the dishonor "[b]y its midnight deadline or within a longer reasonable time after it learns the facts." The term "midnight deadline" is defined in § 7-4-104(1)(h), set out below:
 "'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."
Although the appellants argue that AmSouth failed to notify them by the midnight deadline, they do not contest AmSouth's assertion that it received notice of the dishonor on September 7, 1988, and notified them of the dishonor on September 8, 1988. The appellants' argument on this point is unclear, and this Court can only assume that they are contending that AmSouth was obligated to notify them of the dishonor by midnight of the day following the deposit. If this is, in fact, the appellants' position, it is without merit. Both § 7-4-104
and § 7-4-212 state that the "midnight deadline" is midnight of the banking day following the banking day on which the bank receives the relevant item or notice, or after it learns thefacts. In the instant case, the relevant midnight deadline was midnight of the banking day after the banking day on which AmSouth was notified of the dishonor. AmSouth notified the appellants before that midnight deadline.
After a careful review of the record, this Court finds no error. Therefore, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] White, Underwood, and Patrick were named as defendants in the original complaint. However, summary judgment was entered only against Golden Gulf and Starich. White, Underwood, and Patrick are not parties to this appeal. The judgment against Golden Gulf and Starich was made final pursuant to Rule 54(b), A.R.Civ.P.
[2] The appellants' Exhibit 3 to their depositions, a document signed by the "Chief Financial Officer" of "Starich, Inc., d/b/a Golden Gulf," indicated that they asked on September 1 if the funds had been collected and on September 2 if the funds were available (our emphasis). In fact, Patrick stated in his deposition that he made the deposit on August 30 and that on September 2, he asked the same teller if the funds had beencollected, and the teller answered "No."
[3] In their brief in opposition to AmSouth's motion for summary judgment, the appellants stated that their attached affidavits would reveal a question of fact. However, no such affidavits are contained in the record, and there is no entry for them on the circuit court's case action summary sheet.