ALEX GOLDBERG, Plaintiff, *v.* MANUFACTURERS TRUST COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, January 19, 1951.

*Jesse Perlmutter* for plaintiff.

*William I. Rodier* for defendant.

SILVERMAN, J. This is an action by a depositor against the defendant bank to recover the sum of $198.80 based upon the following facts: On October 9, 1946, the plaintiff drew a check in the sum of $198.80 to the order of cash against his account maintained with the defendant. On the same day, this check

was delivered to a concern as payment for merchandise which was never delivered. On the following day, October 10, 1946, plaintiff stopped payment on this check and signed a " stop payment order " which contained a provision as follows: " This notice * * * shall be deemed revoked three months after the date hereof unless renewed by similar notice signed by the undersigned and actually received by you."

No renewal notice was ever signed by the depositor. On January 19, 1949, more than twenty-seven months after the date appearing on the check, the check was paid by the bank and the amount thereof charged against the account of the plaintiff. At the trial, the plaintiff proved to the satisfaction of the court that he was damaged to the extent of the amount of the check. The bank representative admitted that the payment was made through an oversight of a bank clerk.

In view of the foregoing, the question involved is whether or not a depositor may recover from a bank moneys paid by it on this " stale " check. The bank's representative admitted that the bank considered a check " stale " if it is more than three months old.

Paton, in his Digest of Legal Opinions (1940 ed., Vol. I, § 20, pp. 1107–1108), discusses the problem: " A check presented for payment an unusually long period of time after its date is considered stale, and puts the drawee bank upon inquiry before making payment. As a matter of practice, a drawee bank is justified in withholding payment of a check presented more than one year after date."

Redfield, in his Law of Commercial Paper (§ 584, pp. 428–429) states: " There are one or more old cases and some textbook statements to the effect that a bank is ' put on notice,' by the extended age of a check, that something may be wrong and that it pays at its peril. * * * The practical way out of this dilemma has already been indicated, and is the simple expedient of making inquiry."

These and other text writers on the subject indicate that payment of a stale check involves risk, peril and a duty to inquire. In the instant case, the defendant made no inquiry before making payment of the stale check.

In *Cowing* v. *Altman* (71 N. Y. 435) the court in discussing the effect of the payment by a bank of a check fourteen months after the date appearing on the face thereof, stated at pages 440–441: " The claim by the defendant that the check was dishonored when it came to the possession of the bank, rests upon the fact that it was dated March 8, 1871, about fourteen months

before the time the bank received it. That such a lapse of time between the date and transfer of a check affords a just presumption of dishonor cannot, we think, be doubted. The date of a note or check is *prima facie* evidence of the time it was made and had its inception. (Chitty on Bills, 148; Byles on Bills, 77.) And a check found in the hands of the payee or third person fourteen months after its date, in the absence of explanation, must be deemed to be discredited. * * * But the retention of a check by the holder for a considerable time, without presentment, where no defense exists to it, is unusual, and this circumstance is sufficient to put a party taking it upon inquiry, and a check dated as in this case, several months before its transfer, and which might have been presented at, or soon after its date, will, in the absence of explanation, be treated as overdue and dishonored, whether it has been actually presented or not, so as to let in defenses existing between the drawer and payee.''

In *Williamson* v. *Brown* (15 N. Y. 354) SELDEN, J., at page 360, cites Baron ALDERSON's rule set forth in *Whitbread* v. *Boulnois* (1 You. & Coll. Ex., 303) as follows: '' ' When a party having knowledge of such facts as would lead any honest man, using ordinary caution, to make inquiries, does not make, but on the contrary studiously avoids making, such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained.' ''

Had the bank made inquiry before paying the check, it would have ascertained from its own records that a stop-payment order had been placed against the check, even though by its provisions it was revoked and nullified after the lapse of three months. This knowledge, together with the fact that it was a stale check, placed the burden upon it to inquire of the maker before making payment. Having failed in its duty to so inquire, it is chargeable with the knowledge it would have acquired, had inquiry been made. If inquiry had been made, it would have learned that the maker did not want the check to be paid and had a legal defense for its nonpayment.

Judgment for the plaintiff for the sum of $198.80, with interest. Ten-day stay of execution.