Bertram Harnett, J.
Under the Uniform Commercial Code, does a bank have a duty of inquiry before paying a stale check? Does it matter that the stale check had been previously stopped under a stop payment order which expired for lack of renewal? So this case goes.
Granite Equipment Leasing Corp. kept a checking account with Hempstead Bank. On October 10, 1968 Granite drew a check payable to Overseas Equipment Co., Inc. Five days later, after Overseas advised that the check had not been received, Granite wrote the bank on October 15, 1968 to stop payment on the check. On that same day Granite authorized the hank to wire the payee funds in the same amount as the stopped check and the bank did so. Granite never renewed its stop payment order between October, 1968 and November 10,1969. On November 10, 1969, without notice or inquiry to Granite, the bank accepted the original check to Overseas which had been stopped the year before, paid the indicated funds to a collecting bank, and charged Granite’s account.
Granite now seeks to recover from the bank the amount charged because of the check paid to Overseas in November, 1969. The bank defends on the ground that under section 4-403 of the Uniform Commercial Code the stop payment order had expired for want of renewal, and that acting in good faith it was entitled under section 4-404 to pay the stale check.
There is no doubt the check is stale. There is no doubt the stop payment order was properly given at the outset, and that it was never renewed. Granite essentially maintains the bank had a duty to inquire into the circumstances of that stale check, and should not have paid in face of a known lapsed stop order without consulting its depositor.
The Uniform Commercial Code, which became effective in New York on September 27, 1964, provides that: “ (1) A customer may by order to his bank stop payment of any item payable for his account * * * (2) * * * A written [stop] order is effective for only six months unless renewed in writing ’ ’. (§ 4-403.)
The Official Comment to section 4-403 notes that: “ [t]he purpose of the [six-month limit] is, of course, to facilitate stopping payment by clearing the records of the drawee of accumulated unrevoked stop orders, as where the drawer has found a lost instrument or has settled his controversy with the payee, but has failed to notify the drawee. The last sentence of subsection (2), together with the second clause in Section 4^-404, rejects the reasoning of such cases as Goldberg v. Manufacturers Trust Company, 199 Misc. 167 ” (emphasis supplied).
*352 Granite relies in the main on Goldberg v. Manufacturers Trust Co. (199 Misc. 167) mentioned in the Official Comment, in which the Manhattan Municipal Court held a bank liable to the drawer for payment of a 27-month-old check even though a stop payment order had expired without renewal. Citing Cowing v. Altman (71 N. Y. 435 [1877]), the court there predicated liability on the bank’s payment of a stale check without inquiry into its own records, which would have revealed the lapsed stop payment order and put the bank on notice as to the drawer’s objections to payment. This court believes that the Goldberg decision, without comment on its validity under the common law, is not now the law which prevails by virtue of the Uniform Commercial Code. Moreover, there was no proof at all as to whether the bank even maintained the lapsed stop order in its files, particularly since it has no obligation to do so, and as reflected in the official commentary the purpose of section 4r-403 requiring renewal of stop payment orders is ‘ ‘ to facilitate stopping payment by clearing the records of the drawee of accumulated unrevoked stop orders ”.
Granite cannot be permitted to predicate liability on the part of the bank on its failure to inquire about and find a stop payment order which had become terminated in default of renewal. Feller v. Manufacturers Trust Co. (4 A D 2d 675, affd. 4 N Y 2d 951) held that a drawee hank was not liable to a drawer for payment of a check two months after expiration of a stop payment order which had not been renewed. See, also, Savage, Inc. v. Manufacturers Trust Co. (20 Misc 2d 114) holding a bank not liable for payment on an 11-month-old check after expiration of a stop payment order.
Neither may Granite predicate a claim of liability upon the bank’s payment of a stale check. The legal principles applicable to this circumstance are codified in section 404 of the Uniform Commercial Code which provides that: “ [a] bank is under no obligation # * * to pay a check, other than a certified check, which is presented more than six months after its date, hut it may charge its customer’s account for a payment made thereafter in good faith ” (emphasis supplied). Here too, the Goldberg case reasoning is discarded in the official commentary. There is no obligation under the statute of the bank to search its records to discover old lapsed stop payment orders. The bank does not have to pay a stale check, but it may pay one in ‘ ‘ good faith”. Significantly, section 1-201 (subd. [19]) defines “ good faith ” as “ honesty in fact in the conduct or transaction concerned ”. In the absence of any facts which could justify a finding of dishonesty, bad faith, recklessness, or lack of ordinary *353 care, in the face of circumstances actually known, or which should have been known, the bank is not liable to Granite for its payment of the check drawn to Overseas. (Cf. National Commercial Bank & Trust Co. v. Madison, 270 App. Div. 437.)
One statute invalidates stop payment orders not renewed within six months. Another statute allows payment in good faith of stale checks. Granite cannot combine the two statutes to reach a synergistic result not contemplated by either separately.
Granite’s complete remedy lies in its pending Florida action against Overseas to recover the extra payment.
Accordingly, the court will enter judgment in favor of defendant dismissing the complaint on the merits, without costs and disbursements.