NEO-TECH SYSTEMS, INC., *v.* THE PROVIDENT BANK ET AL.

(No. A-736574—Decided October 17, 1974.)

Court of Common Pleas of Hamilton County.

*Mr. Charles J. Williamson, Messrs. Strauss, Troy & Ruehlmann* and *Mr. Ernest A. Eynon II*, for plaintiff.
*Messrs. Keating, Muething & Klekamp* and *Mr. Dennis M. Doyle*, for defendant The Provident Bank.
*Mr. Richard L. Zielasko, in propria persona.*

NURRE, J. This case comes before the court pursuant to Civ. R. 56, on a Motion for Summary Judgment filed by The Provident Bank, defendant third party plaintiff, and on a Motion for Partial Summary Judgment, filed by Neo-Tech Systems, Inc., plaintiff. The court has reviewed the file herein including the pleadings, affidavit, extensive memoranda of counsel and oral arguments.

The facts are basically not in dispute. The acceptance of what is pertinent fact regarding the motions herein is in dispute. This is an action against The Provident Bank by one of its customers, Neo-Tech Systems, Inc. On or about December 6, 1970, plaintiff filed with the defendant

bank a certified copy of a banking resolution adopted by its board of directors. This resolution provided that all checks drawn on the plaintiff's account in excess of three hundred dollars ($300.00) should bear the signature of Richard L. Zielasko and Robert E. Sherwood, president and treasurer, respectively, of plaintiff corporation.

On November 24, 1971, Robert E. Sherwood resigned as an officer and director of the plaintiff corporation. No provision was made by plaintiff with defendant after November 24, 1971, to replace Mr. Sherwood with some other party as signatory on Neo-Tech Systems, Inc.'s account. From this date forward all checks in excess of three hundred dollars ($300.00) were signed by Richard L. Zielasko alone. At all times pertinent, plaintiff maintained another corporate checking account, the second one being with The Central Trust Company of Cincinnati, Ohio. This was plaintiff's payroll account from which payroll checks were issued to employees. There was no limitation of any kind placed on the number of signatories necessary to write checks on The Central Trust account. Richard L. Zielasko was one of the signatories. From November 24, 1971, to May of 1973, Richard L. Zielasko wrote numerous checks on The Provident Bank account in excess of three hundred dollars ($300.00) to certain trade creditors of the corporation and to The Central Trust payroll account, which checks were necessary to transfer the necessary funds into the payroll account in order for the corporation to make its weekly payroll.

It is agreed between the parties that all monies paid to The Central Trust Company or Neo-Tech Systems, Inc. were properly credited to plaintiff's account with The Central Trust Company.

Plaintiff has alleged through its acting secretary, Charles J. Williamson, that Richard L. Zielasko, the company's president, was not entitled to any salary during the term of his employment and any monies drawn by Mr. Zielasko out of the payroll account maintained with The Central Trust Company were unauthorized.

On September 4, 1973, plaintiff filed a law suit against

the defendant bank seeking to recover the proceeds of those checks written on plaintiff's checking account maintained with defendant bearing only the signature of Richard L. Zielasko and written in amounts in excess of three hundred dollars ($300.00). The complaint sought to recover for those checks written during the period of June 1, 1972, through approximately April 18, 1973, although, as stated, checks bearing the signature of Richard L. Zielasko alone were honored by The Provident Bank prior to June 1, 1972.

Defendant answered plaintiff's complaint and raised an affirmative defense based on Section 4-406 of the Uniform Commercial Code and counterclaimed (2 counts) against plaintiff.

Plaintiff in motion No. 1 of its Motion For Partial Summary Judgment, seeks to strike the affirmative defense raised by defendant in its answer. The defendant's affirmative defense is based upon Section 4-406(4) of the Uniform Commercial Code. Section 4-406 provides, as follows: ·

"(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration of an item and must notify the bank promptly after discovery thereof.

"(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

"(a) his unauthorized signature or any alteration of the item if the bank also establishes that it suffered a loss by reason of such failure; and

"(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding four-

teen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

"(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

"(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

"(5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim."

The issue raised by motion No. 1 directed to defendant's affirmative defense is: "Does the one year period of limitation imposed by Section 4-406(4) of the Uniform Commercial Code as enacted in Ohio begin to run when the first check bearing an unauthorized signature is made available to the customer and bar all right of action in the customer if the customer does not notify the bank within one year thereafter regardless of whether there are other subsequent checks bearing the unauthorized signature of the same wrongdoer, or, does a new one year period of limitation commence to run as each check bearing an unauthorized signature is made available to the customer?"

Section 4-406 outlines a bank customer's duty to use reasonable care and promptness to examine its bank statements and to notify the bank of any unauthorized signatures or altered items. This section precludes the customer from asserting an unauthorized signature against the

bank if the bank can show the customer failed in his duty, provided the customer is unable to establish a like lack of ordinary care on the part of the bank, Section 4-406(4). In addition, without regard to lack of care of either party, the customer must discover and report unauthorized signatures within one year from the time the statement is made available to it or be precluded from asserting such unauthorized signature against the bank.

The Provident Bank argues that the one year period began to run when the first check bearing Zielasko's signature only was made available to Neo-Tech, and that a new one year period of limitation did not begin to run as each subsequent check bearing the unauthorized signature was made available. Under this theory Neo-Tech would be barred from making its claim because the first check with the unauthorized signature was made available to the company over one year prior to notification of the bank on May 31, 1973. Provident basically argues that its theory is consistent with and follows from the wording of Section 4-406 as a whole and the official comments ascribed thereto. The comments indicate the rationale behind the section is the promoting of care by customers to inspect their statements and notify the bank so as to prevent further loss and eliminate the opportunity for the wrongdoer to repeat his misdeed.

Neo-Tech reasons as follows:

"Section 4-406 of the U.C.C., in subsection (a) imposes upon the customers of a bank a duty to exercise reasonable care and promptness in examining the bank statement and returned checks to discover any unauthorized signature or alteration and to notify the bank promptly if any is discovered.

"Subsection (b) deals with the bank's remedies if the customer fails in the duties imposed upon it by subsection (a). It first places the burden of establishing the negligence of the customer upon the bank. It then says that if this negligence is established 'the customer is precluded from asserting against the bank'—and then the language provides for two separate and very significant

preclusions which must be distinguished. The first is a preclusion from asserting 'his unauthorized signature or any alteration on the item * * *.' The second is a preclusion from asserting 'an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer * * *.'

"Subsection (c) is the provision upon which plaintiff's claim principally relies. It provides that the above mentioned preclusions *do not apply* 'if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).' Plaintiff has alleged and intends to prove that defendant was guilty of at least a lack of ordinary care in paying the checks on which this action is based.

"Subsection (d) is the next orderly step in the definition of rights and says, in effect, that even if the bank did not use ordinary care it will not be held responsible for more than one year on any item bearing an unauthorized signature. Defendant, in its pleadings raises an affirmative defense claiming that this subsection fixes a statute of limitations the effect of which is to bar any claim against the bank based upon an unauthorized signature that should have been discovered and reported over one year ago *and* that all claims based on the same unauthorized signature on items since that date are likewise barred.

"Note that subsection (b) uses two different clauses in its two subsections to describe, first, an unauthorized signature on a single item and, second, an unauthorized signature by the same wrongdoer on any other item paid after the first item was available to the customer. Subsection (d), however, uses the same introductory words ('is precluded from asserting against the bank') but then only describes a single item with the same words used in subsection (b) when it referred to a single item only. It is very significant that the legislature did *not* use in subsection (d) the words used in subsection (b) referring to later items having unauthorized signatures by the same wrongdoer.

"Defendant asks this Court to read this latter language into subsection (d). Plaintiff says that if the legis-

lature intended to include both of the subsection (b) preclusions in subsection (d) it would have done so. It clearly indicated its intention to distinguish between two distinct situations in subsection (b) and certainly must have still had those two situations in mind when it drafted subsection (d). This is in accord with well established principles of statutory construction.

"The conclusion thus seems inescapable that the one year limitation attaches to each separate check bearing an unauthorized signature and a new one year period begins to run with each subsequent check when it is made available to the customer. It follows then that the one year period did not expire on any of the checks upon which plaintiff's action is based because they all were first made available to the plaintiff less than one year prior to May 31, 1973, the date upon which plaintiff notified the defendant."

Plaintiff's reasoning is given support by four court decisions: *Hardex-Steubenville Corp.* v. *Western Pennsylvania National Bank* (1971), 446 Pa. 446, 285 A. 2d 874; *Exchange Bank & Trust Co.* v. *Kidwell Construction Co.* (Texas Ct. of Civil App. 1971), 463 S. W. 2d 465; *Gennone* v. *Peoples National Bank & Trust Co.* (1971), 51 Pa. D. & C. 2d 529; *Davis Aircraft Products Co.* v. *Bankers Trust Co.* (1971), 36 A. D. 2d 705, 319 N. Y. Supp. 2d 379.

If Section 4-406(4) is viewed as further protection for the bank over and above that provided where the bank can show lack of care on the part of the customer, it would be logical to conclude that the provision was intended to be construed strictly against the innocent customer. This has not been the interpretation in the case law nor common law prior thereto. The conclusion therefore must be that the one year limitation attaches to each separate check bearing an unauthorized signature and a new one year period begins to run with each subsequent check when it is made available to the customer. The one year period did not expire on any of the checks upon which plaintiff's action is based because they all were first made available to the plaintiff less than one year prior to May 31, 1973, the date upon which plaintiff notified the defendant.

The issue raised by the second motion is whether

Neo-Tech Systems, Inc. was the "drawer or maker" of the checks upon which this action is based, and therefore whether summary judgment should be granted on Provident's counterclaim under U. C. C. Section 4-407. (R. C. 1304.30.) U.C.C. Section 4-407 provides as follows:

"4-407. Payor Bank's Right to Subrogation on Improper Payment.

"If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights

"(a) of any holder in due course on the item against the drawer or maker; and

"(b) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and

"(c) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose."

Provident contends that Neo-Tech was the drawer/maker basing its argument on U. C. C. Section 3-403(b) (R. C. 1303.39 [B]) and a 1967 Pennsylvania Supreme Court decision, *Pollin* v. *Mindy Mfg. Co.* (1967), 211 Pa. Super. Ct. 87, 236 A. 2d 542. Section 3-403(b) provides that an unauthorized signer may become personally liable in place of his principal if he fails to show on the check that he signed in a representative capacity. Read literally, this section would indicate that Zielasko was personally liable on the check and consequently the drawer/maker rather than Neo-Tech. However, Provident places heavy reliance on the *Pollin* case, which held that a corporation rather than its officer should be held liable on a check even though the signer did not indicate his representative capacity. The case considered the instrument as a whole and emphasized business expectation as a factor. The decision departs from the general rule but was decided correctly according to White and Summers, Uniform Commercial Code, at page

405. They indicate that representative capacity should be more easily found on checks than on corporate notes.

In spite of this, *Pollin* seems to be easily distinguishable from the case at bar. In *Pollin* the corporate name was printed directly above the signature line, whereas "Neo-Tech" was printed at the top of the check. More importantly the business expectation that a corporate payroll check signed by an officer would be properly payable is not present here. The checks honored by Provident were not payroll checks and most importantly Provident had actual written notice that Zielasko's signature alone was not to be enough to bind Neo-Tech.

Therefore, unless *Pollin* controls (and it seems easily distinguishable), Zielasko's signature alone, without any indication of representative capacity, would not be enough to make Neo-Tech liable on the check under U. C. C. Section 3-403(b). Therefore Neo-Tech should not be considered the drawer/maker for purposes of Section 4-407. Provident's contention that Neo-Tech was the drawer/maker is indeed a weak contention in view of the card which the bank required indicating how checks must be signed.

Provident cites a 1939 Cleveland Municipal Court decision, *J. H. Hinz Co.* v. *Freeman* (1939), 28 Ohio Law Abs. 546, in which parole evidence was allowed to show that an officer signing directly below the corporate name without indicating the representative capacity did not make him personally liable. Even if this case based on the old General Code is good law, it does not seem that Mr. Zielasko's affidavits, stating he signed for the corporation, can outweigh the fact that Neo-Tech had expressly instructed the bank not to accept such checks.

It should further be pointed out that the official comment to Section 3-403 sets out six examples of possible forms of signature that might be alleged to be in a representative capacity. In these examples "Peter Pringle" is the principal and "Arthur Adams" is Peter Pringle's authorized agent. No. 2 of the comment to that section suggests the signature of "Arthur Adams" standing alone indicates that Arthur Adams is bound personally and "parole evidence is inadmissible to disestablish his obligation."

The position of plaintiff herein is therefore further substantiated.

It is the conclusion of the court that defendant's motion No. 2 regarding count 1 of the amended counterclaim set forth by the defendant is not well taken and plaintiff's motion for partial summary judgment is well taken. This conclusion of the court should in no way be construed to limit the defendant regarding its general defense against damages sustained by the plaintiff. If, in fact, on the merits of the case it is shown that the funds from the controvered checks were used to pay valid debts of the Neo-Tech corporation, the plaintiff suffered no damage, whether it be in theory of unjust enrichment, estoppel, subrogation, or other common law defense. Accordingly, defendant, The Provident Bank, is given 30 days from date of this entry in which to amend its answer if desired.

The issues raised by motion No. 3 are (1) whether defendant had a right to rely upon the warranties allegedly made by plaintiff under Section 3-417(1) (b) of the Uniform Commercial Code and (2) whether defendant acted in good faith in paying the checks referred to in count 2, it being a requirement of the said Section 3-417(1) (b) that such payment be in good faith. If either question is answered in the negative, the plaintiff must prevail on said count 2.

U.C.C. Section 3-417(1)(b) (R. C. 1303.53[A] [2]) provides that the payee of a check warrants to the payor bank that he has no knowledge that the signature is unauthorized. Provident claims that in regard to the checks made out to Neo-Tech and Central Trust, this warranty applies.

It would seem that this section would not apply to the checks which name Central Trust as the payee in that breach of warranty should be asserted against Central Trust rather than Neo-Tech on these checks. However, as is indicated by the depositions herein, Central Trust was the improper or erroneous payee and Neo-Tech was, in fact, the actual payee. The funds were actually received into the account of Neo-Tech, making Neo-Tech the "payee" under Section 3-417(1) (b).

As to the checks made out to Neo-Tech, Provident relies heavily on *Davis Aircraft Products Co.* v. *Bankers Trust Co., supra* (319 N. Y. Supp. 2d 378, 379). This case is similar to the case at bar in that two signatures were required to draw checks. One authorized officer signed and forged the other signature. The checks were made out to the order of "Security National Bank 'Davis Aircraft Petty Cash Account.' " The court in a brief one page opinion stated that since Davis had received payment no loss was recoverable from the bank for honoring the check—"if defendant [bank] is liable to plaintiff [Davis] for payment of forged checks, then plaintiff, as payee-*indorser* of said checks, is liable to defendant for breach of warranty."

In *Davis* the court did not discuss the express requirement of U. C. C. Section 3-417 that the warranty only runs to a part that says in "good faith." Good faith in the Code is defined as "honesty in fact" (U.C.C. Section 1-201[19]), and is determined on the basis of the subjective intent of the party. Neo-Tech suggests lack of good faith on the part of the Provident in paying the checks in view of its non-compliance with the signature card.

In weighing the equities herein, it is the opinion of the court that both plaintiff and defendant have created by their activities (e. g., plaintiff's loose control over Zielasko and his authority regarding bank statements and accounts, and defendant's non-compliance with signature card) the situation that now exists. It is the court's view that this is not, sufficient to establish lack of good faith on behalf of Provident.

It is the conclusion of the court that *Davis* does control and that plaintiff's Motion for Partial Summary Judgment to dismiss count 2 is not well taken and is therefore denied. It is the further conclusion of the court that in accordance with the above reasoning the defendant's Motion for Summary Judgment is granted on count 2 of the Amended Counterclaim.

*Judgment accordingly.*