RPM PIZZA, INC., Plaintiff,

v.

BANK ONE CAMBRIDGE, Defendant.

No. 93 cv 74913 DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 28, 1994.

**518**

Leroy Asher, Jr., Miller, Canfield, Detroit, MI, for plaintiff.

Steven F. Alexsy, May, Simpson, Bloomfield Hills, MI, Stuart H. Teger, Detroit, MI, for defendant.

### MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

 Plaintiff RPM Pizza, Inc. ("RPM"), claims in this lawsuit against Bank One–Cambridge (the "Bank") that the Bank's payment of a check drawn on RPM's account was negligent and violated the requirements of the Uniform Commercial Code, as adopted in Ohio.[1] Specifically, in count II of the complaint, RPM alleges that the Bank acted negligently, breached its duty to RPM, and breached provisions of the Uniform Commercial Code. In count III of the complaint, RPM alleges conversion of an instrument.[2]

The case is now before this Court on cross motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I.

 Summary judgment must be granted when the moving party demonstrates that there is no genuine dispute as to any material fact, and that the undisputed facts of record require that judgment enter, as a matter of law, for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). To survive a motion for summary judgment, the non-movant must demonstrate that there is some dispute of fact as to "an element essential to that party's case, and on which that party will bear the burden of proof at trial...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The "burden on the moving party may be discharged by ... pointing out to the district court ... that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). In making such a determination, this Court will examine any evidence in a light most favorable to the non-moving party. *See Boyd v. Ford Motor Company*, 948 F.2d 283, 285 (6th Cir.1991).

### II.

RPM, a Domino's Pizza franchisee, had maintained a longstanding banking relationship with Defendant's sister bank, Bank One–Columbus. In November of 1987, RPM opened a Controlled Disbursement Account with Defendant, (the "Account"), which functioned as a checking account. Every day,

---

1. This Court's diversity jurisdiction of this controversy is based upon the Michigan domicile of RPM corporation and the Ohio domicile of the Defendant Bank, and the check in question was in the amount of $96,000. 28 U.S.C. § 1332 (1990). A federal court sitting in diversity must apply the substantive law, including choice of law rules, of the state in which it sits. *Phelps v. McClellan*, 30 F.3d 658 (6th Cir.1994). According to Michigan law, however, a court determining a bank's liability for payment must apply the law of the state in which the bank is located.

M.C.L.A. § 440.4102 (1994). Therefore, this Court is constrained to apply Ohio law to this controversy because the Bank is domiciled in the state of Ohio.

2. Count I of the complaint makes several allegations against Systems Marketing and its president Mr. Pope, the payee of the check in question. However, Systems Marketing was voluntarily dismissed without prejudice on March 3, 1994.

the Account would open with a zero balance. As checks drawn on the Account were presented to the Bank, the requisite funds were to be transferred from RPM's savings account at Bank One–Cambridge to the Account at Bank One–Columbus. After the checks were paid, the Account's balance would then return to zero.

On May 29, 1992, RPM erroneously issued a $96,000 check (the "Check"), drawn on RPM's account with the Bank, payable to a computer broker, Systems Marketing. After mailing the check, RPM realized its error, and on June 2, 1992 RPM placed a stop payment order on the Check. As stated in the terms of the Account contract, written stop payment orders are effective for a period of six months. In addition, the Uniform Commercial Code, as adopted by Ohio, also provides that stop payment orders are valid for a term of six months. O.R.C. § 1304.26(B) (U.C.C. § 4–403). The stop payment order against Plaintiff's Check expired on December 6, 1992, and Plaintiff failed to renew the order.

On December 22, 1992, the computer broker, Systems Marketing, deposited the Check in its account at the Bank of Tampa, Florida. When the Bank of Tampa received the Check, it was more than six months old, and was therefore "stale," according to standard banking procedures. *See* Official Comment, O.R.C. § 1304.26(B). Notwithstanding the Check's staleness, however, the Bank of Tampa credited the Check to Systems Marketing's account, and sent it forward. On or about December 24, 1992, Defendant Bank One–Cambridge received the Check, and paid it against Plaintiff's Controlled Disbursement Account.

Pursuant to an agreement between Bank One–Columbus and the Bank, (the "Agreement"), the Bank had established special payment procedures for clearance of Controlled Disbursement Account checks. The Agreement states:

> 2. [the Bank] will not be required to perform signature verification on items under $50,000.
>
> 3. When stale dates and/or multiple signatures (2 or more) requirements are present, [the Bank] will not be required to perform such verification on those items under the amount of $50,000.

These procedures are the agreement forged between the two banks. No such commitments or contracts are made between the banks and their depositors, however.

Plaintiffs have offered the deposition testimony of Karen Hively, the Bank's operations manager, to establish the Bank procedures and to determine exactly what transpired when the Bank received the Check here in litigation. Ms. Hively stated that it was customary Bank procedure for sight pay clerks to verify the signatures on checks that were more than six months old, or were over $50,000. If the signature on such a check did not conform to the signature on file, the sight pay clerks informed the operations manager, who in turn contacted a customer representative at Bank One–Columbus, and that customer representative would contact the customer.

Although Ms. Hively was able to provide an outline of the internal payment procedures for Account checks, she was unable to explain how the Bank handled the Check here in question because she had been on vacation the day it was cleared. Defendant also offered the deposition of Mr. East, Vice President of the Bank, who testified that according to his interpretation of the Agreement, for stale checks or checks over $50,000, the Bank was only required to check the authenticity of the signatures.

Although Mr. East had executed the Agreement on behalf of the Bank, he stated that Ms. Hively would be more familiar with the daily payment procedures. Mr. East also stated that independent of any obligations in the Agreement, sometimes the Bank did inform the customer representative at Bank One–Columbus of a suspicious check. Nonetheless, Mr. East testified that the Bank routinely paid stale checks.

## III.

### A. UCC Ordinary Care claim

■ Plaintiff claims that Defendant's payment of this Check violated its duty to act with "ordinary care", as required by the

U.C.C.[3] The Code does not offer a precise definition of the term "ordinary care", but other courts have concluded that to avoid liability, a Bank must show that its actions are in accordance with sound banking practice, given all the facts and circumstances surrounding the transaction. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579 (3d Cir.1992) (interpreting an identical provision of the U.C.C. as adopted in New Jersey).

Plaintiff urges this Court to adopt a per se rule that payment of stale checks is a violation of the Bank's duty of ordinary care. However, the U.C.C. expressly permits payment of stale checks. O.R.C. § 1304.27 (U.C.C. § 4–404). Furthermore, the Court notes that the check was only stale by three weeks. Based on these undisputed facts, this Court concludes that the Bank's decision to pay the Check did not violate its duty to act with ordinary care, and that it is entitled to summary judgment on this claim.

### B. *U.C.C. Good Faith claim*

■ RPM's next claims that the Bank violated the U.C.C.'s rules on payment of stale checks. Specifically, U.C.C. § 4–404 states:

A bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment made thereafter in good faith.

O.R.C. § 1304.27. The term "good faith" is defined as "honesty in fact in the conduct or transaction." O.R.C. § 1301.01(S) (U.C.C. § 1–201(19)). Good faith definition is a subjective test, requiring an evaluation of the honesty of the Bank's intent, rather than its diligence. *Doyle v. Resolution Trust Corp.*, 999 F.2d 469 (10th Cir.1993) (interpreting an identical provision of the U.C.C. as adopted in Oklahoma); *Neo–Tech Systems v. Provident Bank*, 43 Ohio Misc. 31, 335 N.E.2d 395, 403 (Ohio Common Pleas 1974). Indeed, a Bank could act in good faith and still not follow accepted banking procedures. *Third Nat'l Bank v. Hardi–Gardens Supply*, 380 F.Supp. 930 (M.D.Tenn.1974) (interpreting an identical provision of the U.C.C. as adopted in Tennessee).

■ Turning to the facts presented in this case, the Court notes that Plaintiff has been unable to offer so much as a scintilla of evidence to demonstrate that the Bank had noted the stale date, or the existence of an expired stop-payment order, or was in any respect less than completely unwitting when it paid the stale Check. Furthermore, Plaintiff has been unable to raise a question of fact disputing the Bank's sworn allegation that its review of the Check was limited to signature verification, because of its practice of signature verifications on all checks over $50,000. Therefore, Defendant's motion for summary judgment must be granted on the claim of breach of a duty of good faith.

### C. *Negligence Claim*

■ Plaintiff attempts to construct a negligence claim upon the theory that the Bank's decision to pay the Check without RPM's consent violated the Bank's own procedural requirements. RPM's argument first ignores the language of the Inter–Bank Agreement, itself. The language of paragraph 2 clearly indicates that sight pay clerks are only obligated to determine the authenticity of a check's signature. Paragraph 3 simply applies the signature evaluation requirement to stale checks over $50,000. Thus, the Bank was in full compliance with the Agreement if it paid a stale check with an authentic signature without contacting the customer.

Moreover, the testimonial evidence presented also fails to establish that the Bank's own payment procedures required that the Bank seek RPM's permission before payment. Contrary to Plaintiff's assertions, staleness of a check, absent an unauthorized or forged signature, is insufficient to require the Bank to seek a customer's permission for payment. This is consistent with the language of the Agreement. No breach of duty either to the sister bank or most certainly to the customer, has occurred.

---

**3.** The statute states:
no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure.
O.R.C. § 1304.03(A) (U.C.C. § 4–103(1)).

After a review of all evidence presented, in a light most favorable to the Plaintiff, the Court must grant summary judgment to Defendant on Plaintiff's negligence claim. As noted previously, the signatures on the Check were undisputedly authentic, and it was the Bank's policy and duty to contact Bank One–Columbus only if a signature appeared to be irregular. The stop payment order had expired. Thus, the Bank's failure to seek approval before paying the Check breached no agreement, rule, or policy.

### D. UCC Conversion claim

■ Plaintiff's conversion claim against the Bank is premised upon the same theory as those previously discussed: the argument that by paying the Check without consulting the customer, the Bank breached its duties of good faith and ordinary care. Conversion in the banking context usually involves stolen or forged checks which are forwarded through the stream of commerce and ultimately paid by the drawee bank. As White & Summers have noted, the classic plaintiff in a conversion action is a payee owner from whom the check was stolen. White and Summers, Uniform Commercial Code 756 (3d ed. 1988).

In light of the policy supporting conversion claims, some courts have prohibited a drawer from maintaining a conversion action, arguing that the drawer has no "valuable rights" in the checks because it is not a payee or a subsequent holder. *See Federal Insurance Co. v. First Bank of Boston*, 633 F.2d 978 (1st Cir.1980); *Commercial Credit Corporation v. University National Bank of Fort Collins*, 590 F.2d 849 (10 Cir.1979); *Hinkle v. Cornwell Quality Tool Co.*, 40 Ohio App.3d 162, 532 N.E.2d 772 (1987). According to this line of reasoning, drawers should simply sue the drawee bank for breach of the contract of deposit. White & Summers, Uniform Commercial Code 759 (3d ed. 1988). Suing on a contract of deposit is exactly what RPM did in count II of the complaint. Thus, count III appears to be redundant, especially in light of identical allegations of a breach of the duties of good faith and ordinary care, as well as the fact that the wrongdoing of the payee appears to be the source of the entire problem.

■ This Court has previously concluded that the Bank cannot be held liable, under the facts of this case, for a claim of a breach of the duty of ordinary care or good faith. Accordingly, Plaintiff's conversion claim against the Bank also must be dismissed. Moreover, Plaintiff's conversion claim, if recognized, also would be barred by its own negligence. Section 1303.42 of the Ohio revised code states:

Any person who by his negligence substantially contributes ... to the making of an unauthorized signature is precluded from asserting the ... lack of authority against ... a drawee ... who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's ... business.

Systems Marketing was able to present this Check solely because RPM negligently mailed the Check. As previously demonstrated, the Bank acted in good faith and in accordance with sound banking practices and the law. Therefore, on these facts RPM is estopped from bringing a conversion claim.

### IV.

Accordingly, Defendants' motion for Summary Judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and this matter is dismissed.

IT IS SO ORDERED.