710 A.2d 1067 (1998)
311 N.J. Super. 651
SCOTT D. LEIBLING, P.C., Plaintiff,
v.
MELLON PSFS (NJ) NATIONAL ASSOCIATION f/k/a Glendale National Bank of New Jersey and Fredy Winda Ramos, Defendants.
Superior Court of New Jersey, Law Division, Special Civil Part, Camden County.
Decided January 27, 1998.
Kevin D. Sheehan, Moorestown, for plaintiff.
Dean E. Weisgold, Philadelphia, PA, for defendant.
RAND, J.S.C.

FACTS
Mr. Scott D. Liebling, P.C. (hereinafter "Plaintiff") is an attorney at law. Plaintiff *1068 maintains an attorney trust account ("Account") at Mellon Bank (NJ) National Association ("Mellon"), formerly known as Glendale National Bank of New Jersey. Mellon uses a computerized system to process checks for payment.
Plaintiff represented, defendant, Fredy Winda Ramos ("Ramos") in a personal injury action which resulted in a settlement. On or about May 19, 1995, plaintiff issued Check No. 1031 in the amount of $8,483.06 to Ramos representing her net proceeds from the settlement. Mellon honored that check on May 26, 1995. On or about May 24, 1995, plaintiff mistakenly issued another check, Check No. 1043, to Ramos in the same amount of $8,483.06. Realizing his error, on or about May 30, 1995, Plaintiff called Ramos in Puerto Rico and advised her that the Check No. 1043 was issued by mistake and instructed her to destroy the check. Thereafter, Plaintiff called Mellon and ordered an oral stop payment on the check.
On December 21, 1996, some nineteen months after plaintiff issued the Check No. 1043, Ramos cashed the check from Puerto Rico.
Plaintiff filed this complaint against both Ramos and Mellon. Ramos was served and defaulted. Plaintiff's complaint against Mellon alleges breach of duty of good faith, negligence, breach of fiduciary duty, payment of a stale check, and breach of contract as a result of Mellon honoring the second check, Check No. 1043. A trial was held before Judge Rand on December 5, 1997. Thereafter, the parties submitted their legal positions to the court.

ARGUMENTS
Plaintiff argues that Mellon is liable for several reasons. First, plaintiff alleges that he had no knowledge of Mellon's policy regarding old "stale" checks. Plaintiff asserts that he did not receive a copy of either Mellon's or Glendale's procedures when he opened his account in 1991. In Mellon's policy statement, it states that "[w]e may pay any check or other item drawn on an account even though it is presented to us for payment more than six months after its date; an expired stop payment request was made regarding it ... we will not be liable for paying a check or other item under any of these circumstances." However, plaintiff claims that this statement is not relevant to the present case because he was unaware of Mellon's policy. Further, plaintiff states that the copy of Mellon's policy, which was introduced into evidence, could not have been provided to plaintiff at the time he opened the account because it was a November, 1997 revised copy.
Second, plaintiff relies on the New Jersey Study Comment to N.J.S.A. 12A:4-404 which reads:
A bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment made thereafter in good faith.
The 1962 Comment thereto states "[a] `stale' check is one presented for payment an unusually long time after its date, and, at common law, it put the drawee on inquiry before making payment." However, the current Comment reads "[t]he time limit is set at six months because banking and commercial practice regards a check outstanding for longer than that period as stale, and a bank will normally not pay such a check without consulting the depositor" New Jersey Study Comment, pocket part, page 204 (1995), which is different language than that which was included in the original New Jersey Study Comment published in 1962. Therefore, plaintiff argues that Mellon did not act in good faith and comply with the commercial standard because it honored Check No. 1043, which was more than six months old, without consulting the plaintiff.
In contrast, defendant argues that Mellon acted in good faith by honoring the check. Specifically, defendant claims that it can not be held liable for the payment of the check because the oral stop payment order had long expired. Defendant asserts that had plaintiff wanted to ensure that payment was not made on that check, he could have reissued the stop payment order or closed the account.
*1069 In addition, defendant relies on out of state case law. Specifically, defendant cites Advanced Alloys, Inc. v. Sergeant Steel Corp., 72 Misc.2d 614, 340 N.Y.S.2d 266, 11 UCC Rep.Serv. 1230. In that case, a bank made payment on a check that was presented for payment fourteen months after its issuance and after the expiration of a stop payment order. The court stated that pursuant to § 1201(19) of the 1962 Uniform Commercial Code, the definition of good faith is "honesty in fact in the conduct or transactions concerned." The court determined that in the absence of any evidence that the bank did not act with honesty in fact, the payment was made in good faith and was not wrongful. Therefore, defendant argues that it acted in good faith when it honored the check in question.

ISSUE
Whether the defendant bank acted in good faith when it honored a check that was presented for payment nineteen months after it was issued and subsequent to the expiration of an oral stop payment order?

DISCUSSION
It is important to consider the relevant New Jersey statute sections before discussing what actions constitute "good faith." Under N.J.S.A. 12A:4-403(b):
[a] stop payment order is effective for six months, but it lapses after 14 calendar days if the original order was oral and was not confirmed in writing within that period. A stop payment order may be renewed for additional six-month periods by a writing given to the bank within a period during which the stop-payment order is effective.
In addition, N.J.S.A. 12A:4-404 states:
A bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment made thereafter in good faith. (emphasis added.)
Thus, the issue in the present case turns on whether Mellon acted in good faith when it honored plaintiff's check. Good faith under N.J. Uniform Commercial Code has been defined in N.J.S.A. 12A:3-103(a)(4) as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Since there is no New Jersey case law directly on point, it is necessary to consider alternate sources. One law review article by Florence Pfullmann Berkley, Computerized Check Processing and a Bank's Duty To Use Ordinary Care, 65 Tex. L.Rev. 1173 (May, 1987), addressed the present issue. Specifically, the article explained that "Article 4 of the Uniform Commercial Code imposes on all banks the responsibility to act in good faith and to exercise ordinary care. The drafters of the Code chose not to provide an explicit definition of `ordinary' care, stating only that the term is to be used `with its normal tort meaning and not in any special sense relating to bank collections'." Id. at 1195. In addition, the article suggested the appropriate standard of care in light of the widespread development of computerized check processing systems in banking industry. Specifically, the article explained a two-step analysis:
First, the court should determine whether the system is one in general banking usage not disapproved by the Code. If so, use of the system prima facie constitutes the exercise of ordinary care. The burden of proof then shifts to the party claiming that the bank has failed to use ordinary care to prove that selection or use of this system was unreasonable. If the system is so new that it is not yet in general use in the banking industry, the burden of proof would remain with the bank, and the analysis would involve determining whether the system is `reasonable under the circumstances.' Once a bank has proven its prima facie case, the second step in this analysis involves a determination by the court that the particular system is reasonable under the specific circumstances of the case. At this stage, the court can examine a number of factors, including whether the computer procedure is reasonably related to the particular banking task, whether any increased accuracy from the use of another procedure or system outweighs the costs of implementing such a system, and whether the computer *1070 system is state of the art. If the bank succeeds [in proving its initial burden], then the burden shifts to the opposing party to prove that the system, although one in general banking usage, was not a reasonable one under the circumstances.

[Id.]
The article explains that this analysis acknowledges that the Code was written before the era of computerized check processing.
In addition, the Third Circuit case of Hartford Accident & Indemnity Co. v. First Pennsylvania Bank, 859 F.2d 295 (1988), appears to be analogous to the present issue. In Hartford, an insurance company brought a subrogation action against a payor bank to recover on an altered check that the bank had paid. On April 17, 1984, the plaintiff placed a written stop-payment order on a certain check, and under applicable state law the stop payment order was good for six months. On December 26, 1984, two months after the stop payment order had expired, the bank honored the check. Before concluding that the payor bank had acted in good faith, the court analyzed the definition of "good faith". The court stated that "13 Pa.C.S.A. § 1201 defines good faith as `honesty in fact.' This definition must be viewed subjectively; a finding of bad faith must be predicated on a showing of dishonesty. Likewise, mere negligence does not preclude a finding of good faith." Id. at 297. (emphasis added). In holding that the bank had acted in good faith, the court stated:
[a]s a result of the expiration of the order, [the bank] cannot be said to have the actual knowledge that would deny it the status of a good faith payor .... The obligations which a bank incurs as a result of its customer's imposing a stop order on a check do not continue in perpetuity.... [The bank] was neither negligent nor reckless and certainly cannot be said to have been subjectively dishonest.... A finding of bad faith requires actual knowledge on the part of the payor. An objective inquiry into what the circumstances should have revealed to [the bank] is simply not germane to the analysis.

[Id. at 297-298.]
The out of state case law relied on by defendant further addresses the present issue. The case, RPM Pizza, Inc. v. Bank One Cambridge, 869 F.Supp. 517 (E.D.Mich. 1994), held that the bank was not liable for payment of a stale check where a stop payment order had expired and there was no evidence contesting the bank's good faith. In particular, the court found that "[g]ood faith definition is a subjective test, requiring an evaluation of the Bank's intent, rather than its diligence." Id. at 520.
In contrast, plaintiff's argument centers on the proposition that the bank's duty of good faith required it to inquire or consult with plaintiff before honoring a stale check that had a previous oral stop payment order on it. This argument was upheld in the Pre-Code case of Goldberg v. Manufacturers Trust Co., 199 Misc. 167, 102 N.Y.S.2d 144 (N.Y.Mun. Ct.1951). In that case, the bank was held liable to the drawer for payment of a 27 month old check even though a stop payment order had expired. The court predicated liability on the bank's payment of the check without inquiring into its own records which would have revealed the lapsed stop payment order and put the bank on notice. Similarly, in Charles Ragusa & Son v. Community State Bank, 360 So.2d 231, 234 (1978), the court concluded that "payment of a three year old stale check demonstrated the bank's lack of due care and prevented the bank from claiming the defense of good faith." The N.J. Study Comment to N.J.S.A. 12A:4-404 cites Redfield, The Law of Commercial Paper § 584, noting that the "practical way out of this dilemma is the simple expedient of making inquiry."
However, in the Uniform Commercial Code Treatise, "Hawkland § 4-404:01", Mr. Hawkland stated that the above cases are not consistent with the Uniform Commercial Code. Specifically, "[t]he duty [of inquiry] is inconsistent with the provisions of subsection 4-403(2) on the expiration of the `effectiveness' of stop orders. Such a duty is hardly practical today." Moreover:
[t]o require that a payor bank check the date of every check received via the collection process would unreasonably increase the cost of processing every check written *1071 today. To restate the suggested judicial analysis in the terms used by § 4-404, a stale check is paid in good faith whenever the usual practices of the general banking community require the payor to pay according to the terms of the item without having to examine it by hand and human eye. However, if the current standards or practices of check handling result in a visual inspection for any reason, a payor bank cannot pay a stale check in good faith without first consulting the depositor for his authorization to do so. (emphasis added).
Plaintiff counters that in order to interpret § 4-404, this Court should give total credence to the explanatory comments drafted many years before the most recent code § 4-404 revisions. Pursuant to § 4-404, the bank may charge the customer's account for a check presented more than six months after it is dated as long as the bank acts in good faith. N.J.S.A. § 12A:3-103(a)(4) defines good faith. The definition "honesty in fact and the observance of reasonable commercial standards of fair dealings" is a revision from the 1961 version of the Code. It interjects a subjective analysis into the concept of fair dealings. The Code Comment notes:
Although fair dealing is a broad term that must be defined in context it is clear that it is concerned with the fairness of the conduct rather than the care with which an act is performed. Failure to exercise ordinary care in conducting a transaction is an entirely different concept than failure to deal fairly in conducting the transaction. (emphasis added).
[See, Comment to N.J.S.A. § 12A:3-103, note 4 (1995) (Supp. p. 7).]
The Commercial Code was initially adopted in November, 1961 in New Jersey. In 1990, Articles III and IV of the Code were substantially revised relating to, among other thing, bank deposits and collections to become effective on June 1, 1995. The court is satisfied as pointed out by the defendant that those Amendments were enacted in order to address the effect of automated systems utilized by banks with the substantial increase in check usage after the original enactment of the Code. The Official Code Comment to the 1995 Amendments for § 12A:4-101, states as follows:
1. The great number of checks handled by banks and the country-wide nature of the bank collection process require uniformity in the law of bank collections. There is needed a uniform statement of the principal rules of the bank collection process with ample provision for flexibility to meet the needs of the large volume handled and the changing needs and conditions that are bound to come with the years. The Article meets that need.
2. ... An important goal of the 1990 revision of Article 4 is to promote the efficiency of the check collection process by making the provisions of Article 4 more compatible with the needs of an automated system and, by doing so, increase the speed and lower the cost of check collection for those who write and receive checks....
[Code Comment to N.J.S.A. § 12A:4-101 (1995) (Supp. p. 157).]
The 1995 Amendments to § 12A:4-404 New Jersey Study Comment include different language than that or which the plaintiff totally relied. The Plaintiff's reliance upon the 1962 Study Comment is misplaced and outdated. The more modern and up to date approach requires a rejection of the 1962 Study Comment upon which plaintiff's argument solely rests.
Thus, in determining whether the defendant bank in the present action acted in good faith, the above cited material must be analyzed and applied. First, it appears clear that the Uniform Commercial Code acknowledges that computerized check processing systems are common and accepted banking procedures in the United States. (see Florence Pfullmann Berkley, Computerized Check Processing and a Bank's Duty To Use Ordinary Care, 65 Tex. L.Rev. 1173 (May, 1987) and Hawkland Treatise § 4-404:01). Therefore, it can not be said that defendant bank acted in bad faith by using a computerized system when it honored plaintiff's "stale" check. Furthermore, it appears that the test for good faith is a subjective test. Thus, based on all of the foregoing material, *1072 as long as the defendant bank used an adequate computer system for processing checks (here there is no proof to the contrary), it appears to have acted in good faith even though it did not consult the Plaintiff before it honored the "stale" check that had an expired oral stop-payment order on it. As stated in Hartford, supra, the obligation of a bank to stop payment on a check does not continue in perpetuity once the stop payment order expires.
The bank's conduct was fair and in accordance with reasonable commercial standards. Accordingly, it appears that the defendant bank is not liable and should prevail. A finding of no liability is entered for the defendant bank.